Good morning. May it please the court. Tim Wellborn for Appellant Gale Gunderson. This case actually involves what I, during preparation for this argument, identified as potentially three separate issues that are practically issues of first impression for this court. And so I'm kind of curious which one of those issues the court wanted to hear about. So if there's a specific question, please fire away. If not, I will jump into the one that I want to address. Breyer Yeah, because, quite honestly, I didn't quite see the issues of first impression. But, you know, if you think there are issues of first impression here, I would like to bring them to my attention. I think that would be very good. And I talk at length about Social Security ruling 8515. Now, in this Court's Roberts case in dictum, the Court held that this ruling didn't apply to cases where the claimant alleged both nonexertional impairments and exertional impairments. And I think in that dictum what the Court overlooked is that the ruling doesn't talk about what combination of impairments the claimant has. The word solely modifies impairment. So the impairment itself is a solely nonexertional impairment. For example, dexterity, a limitation in dexterity would be solely nonexertional because it doesn't have a strength capacity or a visual limitation, a hearing limitation. Many mental limitations are solely nonexertional. And so when SSR 8515 talks about solely nonexertional impairments, it's talking about the impairment itself. Now, the problem with this argument, though, I think, and I'm not sure, but I think we've sort of addressed SSR 8515 in two cases, which seems to foreclose your argument. Well, maybe so. Maybe the one I found was Roberts, and that's the one relied upon by the district court. But I think if you read 8515 specifically focusing on this issue, it's clear that there is a distinction between solely nonexertional impairment, in quotes, versus claim in which the sole impairment is nonexertional. Those are two distinct concepts. And what 8515 talks about is the former, not the latter. Okay. Now, if there's case law that is absolutely precluding me from doing this, then obviously only an en banc court could overturn that. No, I was just going to say, why don't you go to the next issue or whatever. Judge Talmadge would like to address that. I want to move on to a completely unrelated issue to the argument you were just making. Okay. And that is, I thought that there was a prohibition against awarding Social Security benefits to somebody who was an alcoholic or a drug abuser. No. Not at all. There's a prohibition from basing a finding of entitlement to disability benefits on a disability which is caused by current drug abuse or alcohol abuse. Okay. So as long as that isn't the basis of the claim of disability. Exactly. Even if you suffer from those diagnoses, you're still entitled to benefits. Yes. You can have raging heroin addicts who drink a 12-pack a day of whiskey, and they can be found disabled if they have some other impairment which would remain disabling in the absence of a drug or alcohol abuse. Thank you. I did not realize that. Thanks. Why don't you turn, which I think probably is the most interesting issue, is the psychological impairment unique? The fact that I'm arguing that an anxiety disorder once found to be severe, step two, has to be. No, no, no. It's that here the well, that's related to that, but isn't there a special procedure that the ALJ must find if they find a. Oh, yes. The PRTF, what used to be called the psychiatric review technique form. Yes. They no longer fill out the form, but they still have to narratively do it. It has to be incorporated in the decision. Right. And what my argument here is that the ALJ simply said he doesn't have any marked impairments, but once having found that the mental impairment is severe, it's not sufficient to say merely that it's not a marked impairment. You have to say what it is, because a severe impairment, as I pointed out in my rule 28J supplemental citations letter, the agency's own program operations manual system, the POMS, specifies that if an impairment is severe, it does significantly limit the residual functional capacity. But let's go back. Why isn't this just harmless error in the context of this case? Well, there was a failure to abide by the analysis. I don't think it is harmless error, Your Honor, because if you look at the effects of the mental impairment, I believe it would include the specific jobs that the ALJ identified. Now, I don't disagree.    It's been treated. Well, but you're kind of lapping over a step 2 severe impairment finding and bringing it over to a step 4 or step 5. Right. Which is where it has to go. It's different. They're different as I understand it. Step 2 is, you know, it's like an easy – it's like a gateway kind of thing. It's kind of easy to open the gate, but you've got to get all the way to the end. Sure. So this mental impairment analysis really kind of relates to step 2. Well, once it's found to be – And it allows you to get to step 3 to determine whether it fits on the chart. Right. And at step 3, the ALJ's finding at step 2 establishes that this impairment significantly limits, quote, unquote, the RFC. That's what a severe impairment is. Significantly limits. Those are the keywords. You just conflated the two again, but go ahead. So then you go to step 3, where the ALJ didn't say what the limits, you know, what severity they were. They're obviously more than mild to non, because that would be non-severe by definition. So the next step is moderate at step 3, and then the ALJ said it's not marked or severe, so we know that it's not that. But it's somewhere in here in that moderate range, and the ALJ never said where it was, and so because she didn't say what it was at step 3, it's somewhere worse than mild, but not marked. I just want to segue from Judge Pius' question to this, because I'm ultimately interested in the same thing he is, which is, is there a harmless error factor here? As I look at 404.152A.E.2, the ALJ's decision, and I'm quoting here, must include a specific finding as to the degree of limitation in each of the functional areas. Let's just say for purposes of our discussion that the ALJ did not do that here. Nonetheless, if we look at it overall, do we have the liberty, if you will, to say, well, you know, this is really not going to change the outcome, therefore it's harmless error, or are we required under our Gutierrez v. Appel case to send it back to make the appropriate finding? I think you do need to send it back, Your Honor, because without the ALJ having made that finding of severity at step 3, where it falls on that scale, there is no rational basis for the ALJ then to proceed to step 4 and 5. So this is a structural, mandatory analysis and finding that the ALJ must do in this kind of a case. I believe it is, Your Honor, and I think the remedy is simply send it back. Let me ask a follow-up question to Judge Smith, and that is, is there any – is there a reasonable probability or possibility that if the ALJ were to go through the correct analysis, make the findings and whatnot, that he could satisfy the step 3 criteria? And be disabled at step 3? Yes. No, because the judge already found that listing level – that it's not listing level at step 3, and so we don't win at step 3. I will concede that we don't win at step 3. Even if the ALJ were to make –  No, no, no. Okay, so I'm just trying to understand this. No, we win at step 5. Okay, so even if we were to send it back and the ALJ were to make the proper findings, there's no way you could qualify at step 3? Not if the ALJ found, as Judge Kingery did, that the limitations are not at the marked to severe level, because that means that you have to go to step 5. In other words, you need marked or severe for step 3? Yes. So it's a step 5 case. Okay, so what you're saying is that nonetheless, those findings would be helpful for step 4 and 5. Steps 4 and 5. Oh, not only helpful, but absolutely essential, because what happened at step 4, the RFC assessment is kind of a – Right. At step 4 and step 5, but what happened there is after finding that both hepatitis and the mental impairment were severe, meaning significantly limiting, ALJ didn't include any RFC limitations arising from those two impairments in the RFC at steps 4 and 5. All right. Thank you. And I see my time has more than expired. May it please the Court. My name is Willie Lee, representing the Commissioner of Social Security. In addressing this – the psychiatric review technique and step 2, I think I could best sum it up by saying this. As Judge Paez hinted at, steps 1 and 2 are really procedural barriers. They go hand in hand. They just make sure that a claimant, claiming that he or she is disabled, has a bona fide case that would merit the full extent of the review of the five-step analysis. Of course, when someone says, I'm too disabled to work, step 1, we ask, okay, well, are you working? That's a pretty easy question to answer. Now, a lot of people aren't working in this economy, so we go to step 2. If you're not working, do you have any medical impairment that could potentially affect your ability to work? Now, from the agency's perspective, we utilize step 2 as a mechanism to screen out cases where there's no possible way that the medical impairments alleged have any effect on a claimant's ability to work. So, therefore, that's why the language is set up in such a way that says, we must show – we, the agency, must show that your medical impairments do not substantially limit your ability to work. And if that's the case, we can screen out the case. Now, under any other circumstance, we allow the case to move on. And this is in keeping with Webb versus Barnhart. Now, I think I can identify three possible ways someone can surpass step 2. Number 1, they obviously have an impairment that affects their ability to work. It's pretty obvious, okay, so we move them on. Number 2, there's a combination of non-severe impairments that, in combination, we can pretty much tell, yes, it does affect your ability to work. We let you go on. Now, in Webb, when the evidence is conflicting, it can go either way. We're instructed to err on the side of caution, give the claimant the benefit of the doubt, and, once again, allow the case to move on. So, Mr. Lee, forgive me. This is very interesting, but since we don't have very much time, I wonder if I could focus it to the specific issue of the necessary findings that I discussed with opposing counsel. As I look at Gutierrez, which admittedly dealt with the predecessor regulation, if there's even a colorable claim of mental impairment, the ALJ has to make specific findings for each of the functional areas as required by the current regulation. Do you agree with that? I do, yes. Okay. Admittedly, this is not a binding thing in any way, but we had a recent three-judge panel of our court in Selassie v. Barnhardt that referred back to this and said, you know, they're not your technicalities. Maybe it's structural. It's not. It's an error. You've got to send it back. Were they wrong? I recognize Selassie. There's also a case called Dykstra v. Barnhardt that kind of dealt with the exact same issue. They're not wrong. Did they come to the same result? I'm sorry? Did they come to the same result? Yes, they did. Okay. So you've got two non-published opinions, which, of course, are not binding precedent, but at least we've got six of our colleagues. I wasn't on that case. I don't know whether my other colleagues were, but we have at least six of us that have interpreted this situation as requiring a remand. Whatever its ultimate impact on the case, I'm looking for some distinction. Is there a distinction here? Well, there is a distinction in Gutierrez and Selassie and Dykstra. The ALJ didn't follow the technique whatsoever. Right. Here, the ALJ did follow the technique. I don't think there's any question of that. It didn't make the findings, though. Right. Now, she made some findings, and I think they were enough to allow for evaluation of this case. Now, there are three basic reasons why we use that technique. Well, one overall reason is it helps us organize, helps the agency organize its findings in a way that is consistent. We utilize the technique at step two to determine whether something is severe. We utilize it at step three to see if the claimant meets a listing of disability. And we say, well, obviously these four functional areas are so limiting that we don't really need to look at how you can work. We just kind of know you're disabled. That's not an issue here. Mr. Wilborn concedes that step three, there's no possible way that, under what the ALJ found, there's no way they can beat a listing. But, again, with respect, Mr. Lee, we unfortunately find this with district courts. We see certain district courts where they, for example, have a summary judgment motion, and they just say, granted, they don't write anything. They don't explain why they did it. The rules say they have to do that. We have to send that back. In this case, even though the ALJ may have been very careful in analyzing it and so on, but did not make the findings, how do you get around the regulation that says you've got to do that? And Gutierrez that says that in a substantially similar regulation, we have to send it back. The best I can say is that it's harmless error, and I can explain why. Do you have any authority for that concept, that there is harmless error in this? Or that we can have harmless error in this setting? In this setting, I'm not sure it's ever come up. I think Gutierrez has. There's a doctrine of administrative harmless error that applies in Social Security cases. Sure, yes. Procedural errors are for our benefit. They're not substantive safeguards for the claimant's benefit. Overall... We'd be making new law, would we not? I think you would. If we said that notwithstanding failure to comply... Yes, I think you would. ...that this constitutes harmless error. Right. And I had many statements to help you understand why it would be harmless, but I'm not sure if you'd like to hear that first. I appreciate your good faith, and I understand your argument as to why. At the end of the day, it really doesn't make any difference. I'm just struggling with the fact that we seem to have a regulation that is mandatory. We have a case that deals with a substantially similar regulation. It says you've got to send it back. Well, if Your Honors are so inclined, the Sixth Circuit decided last year that even the absence of following the technique whatsoever was harmless error in the case of robbers versus commissioner. I'm sorry, what is it again? Robbers, R-A-B-B-E-R-S. And do you have a cite on that? Yes, sir. It's 582 F. 3rd, 647. Thank you. Let me ask you if there's something that... Yes, Your Honor. ...picks up from where the points that Judge Smith has made. What do we do with the rest? Let's assume that we, that the case should go back for this, to complete this analysis as required by the regs. What do we do with the rest of the issues that are in the case? Just send the whole thing back and say do this, start all over at step two and do what's required? Well, sending it back on this issue, I think it would only affect the outcome of the residual functional capacity as it relates to Mr. Gunnarsson's mental impairments. That sounds like then we should just send it back. And if we think that there was error, then it's non-harmless, that we should just send it back and not resolve these other issues. That's up to the court. And I think anything that goes back, we review de novo anyway, if it's remanded by the district court. So, yes, everything would be on the table. Everything. So just, so, okay. I would like to point out that Lewis versus Astru stood for the general proposition that it's not, in Lewis the ALJ kind of misclassified something as non-severe but found limitations anyway. Therefore, Lewis stated that it's really not the form that matters, it's whether or not the agency fully analyzes the medical situation and incorporates it into the RFC. I think the opposite could be true, that given Webb, sometimes we overestimate that something's severe at step two, but that doesn't compel us. It's not a concession or an admission that there are limitations, therefore, in the RFC. It always comes down to what the evidence says. And I would note that in our briefs, we didn't really talk about the evidence. We're only discussing what legal definitions are, what the structure is, and what compels certain things. I think the evidence comes down to that there were no mental limitations in the RFC, and not only Lewis but Bray, I think, addressed this best last year. Severe mental impairment was found there, but in the RFC there was no limitation. Well, Bray said, well, it's really harmless error, and on top of that the facts were, the facts supported the ALJ anyway. So it's form over substance. Well, you know, to that I would just say this, that is the Social Security Administration has adopted quite a formulaic process for evaluating these claims, and the agency has made a great deal about how the ALJs are supposed to comply with all the standards and procedures and rules and everything else, and it's quite elaborate, and, you know. And mistakes happen. ALJs aren't perfect, unfortunately. Thank you. Thank you, Your Honors. I'll give you one minute. If you have something you feel like you need to inform us of. Really the only point I would make, Your Honors, is that the Gutierrez case in the official citation has the round part at the top and the tail coming down like a 9, and the Ravers case has the round part at the bottom and the tail coming up like a 6. And this Court considers the Ninth Circuit precedent, and I don't think that opposing counsel is making a proper citation to Ravers when he's aware that there's a Ninth Circuit case which is absolutely 180 degrees opposite to what Ravers holds. But I – maybe I misunderstood. I thought Mr. Lee's reference to Ravers was to the concept of harmless error. Maybe I misunderstood. Well, his citation to Ravers, as I understood it, was that it's harmless error if the functional analysis – That's not what he said. Yeah. I think what I heard his argument be was, you know, it's all well and good to be good legal technicians, but there's at least one other circuit out there that has looked at this and said, you know, harmless error does have a place in evaluation of these claims on appeal. That's all I understand. I agree that harmless error does have a place, but I don't agree that it – I mean, otherwise we're just in an endless game of up and down to the court of appeals. Right. And I wouldn't have brought this appeal in the first place if I thought that this truly was harmless error. But – And we do. The Ninth Circuit does have a body of harmless error cases. Oh, yes. And it's quite hotly contested right now. It's going back and forth. Okay. We've got your points. As we're all aware. Certainly glad to know how we're supposed to identify cases from the Ninth and the Sixth Circuit, though. Yeah. See, you learn something new every day. You do every day. Thank you.
judges: Paez, Tallman, Smith M.